428 So.2d 272 (1982)
Stacey R. ABERNATHY, Appellant,
v.
EMPLOYERS INSURANCE OF WAUSAU, Metropolitan Drywall Systems, Inc., Aetna Casualty and Surety Company and Allied Crane Service, Inc., Appellees.
No. 82-331.
District Court of Appeal of Florida, Second District.
December 10, 1982.
Bruce D. Frankel and John B. Cechman of Goldberg, Rubinstein & Buckley, P.A., Fort Myers, for appellant.
Gerald W. Pierce of Henderson, Franklin, Starnes & Holt, Fort Myers, for appellees, *273 Employers Ins. of Wausau and Metropolitan Drywall Systems, Inc.
Jana V. Jay of Napier & Donovan, Naples, for appellees, Aetna Cas. and Surety Co. and Allied Crane Service, Inc.
CAMPBELL, Judge.
In this case, we consider the question of whether an employee of a general contractor may sue a subcontractor in tort for the negligence of the subcontractor's employee. Stacey Abernathy worked for Deltona Corporation. That company was, at least nominally, the general contractor on a condominium construction project being developed by its wholly owned subsidiary, Marco Island Beach Front, Inc. Deltona contracted with Metropolitan Drywall and with Allied Crane for certain work in connection with the construction project.
On August 13, 1980, while Abernathy was unloading sand, a rolling rack used to transport drywall fell from a crane and injured him. An employee of Allied Crane was operating the crane at the time of the accident and an employee of Metropolitan Drywall had secured the load of drywall being lifted by the crane. Abernathy received workman's compensation benefits from his employer, Deltona, and its insurer. He thereafter sued the subcontractors and their individual insurors in tort. The defendants filed motions for summary judgment, raising sections 440.10 and 440.11, Florida Statutes (1979), as providing immunity from any tort action against them by an employee of a general contractor. The trial court granted summary judgment and Abernathy appealed. We reverse.
On appeal, the primary question presented to us by the parties for our consideration was whether the trial court erred in deciding on a motion for summary judgment that the Deltona Corporation was a general contractor as statutorily defined in chapter 440, and that the immunity from tort actions provided therein flowed down to the subcontractor. After reviewing the record and hearing arguments of counsel, it is apparent that there are factual issues in this case as to whether Deltona was a "statutory" general contractor that should have precluded summary judgment even if that issue were the only issue determinative of any immunity of the appellees. Summary judgment should only be granted when there is no material issue of fact in dispute and the moving party is entitled to judgment as a matter of law. Perez v. Milton, 322 So.2d 562 (Fla. 3d DCA 1975). More importantly for our purposes, however, is the basic question of whether a subcontractor is immune from tort actions by an employee of the general contractor.
Section 440.10(1), Florida Statutes (1979),[1] requires all contractors falling within the provisions of chapter 440 to arrange for compensation for their employees in the manner provided by that chapter. In addition, when these contractors sublet work, they must also secure compensation for the subcontractor's employees unless the subcontractor has already so provided. This makes the contractor who sublets work the statutory employer of all employees of its subcontractors working on a particular project. Section 440.11(1)[2] makes this liability *274 to secure compensation the exclusive form of liability of the employer. Therefore, so long as security for compensation is maintained for all their statutory employees, the contractors obligated to secure such compensation are immune from suit.
In Younger v. Giller Contracting Co., 143 Fla. 335, 196 So. 690 (1940), our supreme court construed the relevant portions of the then existing workman's compensation act[3] as also creating reciprocal immunity in favor of the subcontractor who is sued by an employee of a general contractor. The court reasoned that the subcontractor enjoyed this immunity because all the employees were working on the same project and should, therefore, be on an equal footing in the nature of fellow servants. Later, in Miami Roofing & Sheet Metal Co. v. Kindt, 48 So.2d 840 (Fla. 1950), the court extended this common employment doctrine and prevented a tort action by one subcontractor's employee against another subcontractor.
In Jones v. Florida Power Corp., 72 So.2d 285 (Fla. 1954), the court departed from a strict application of the common employment doctrine and stated: "It is the liability to secure compensation which gives the employer immunity from suit as a third party tort-feasor. His immunity from suit is commensurate with his liability for securing compensation... ." 72 So.2d at 287. See also Frantz v. McBee Company, 77 So.2d 796 (Fla. 1955). Despite this apparent departure from Younger and Miami Roofing, the court sustained those decisions in Carter v. Sims Crane Service, Inc., 198 So.2d 25 (Fla. 1967). In Carter the court held that the immunity from tort action protects a contractor from action by an employee of any contractor or subcontractor on the project so long as the contractor being sued has complied with the liability to secure compensation. The immunity in that situation was held to exist even though the contractor being sued had no obligation to secure compensation for the employee bringing the tort action. The court stated that:
Immunity of a subcontractor in this situation is in fact based upon his sharing the burdens of the act, either directly by the assumption of coverage for some of the employees on the job or indirectly because of the effect of compensation liabilities upon the terms of his subcontract and relations with the general contractor.
198 So.2d at 27-28. Therefore, the concept emerged that so long as an employer met the requirement of chapter 440 to provide compensation for its employees, it thereby became the "statutory" employer of all employees involved in the project regardless of who employed them, and the immunity from tort liability flowed "vertically" and "horizontally" to all employers on the project who complied with the statute.
This approach, as well as the Younger common employment doctrine, has been severely criticized:
There are a host of things wrong with this [Carter] approach, ... [T]he concept of "liability" is a two-sided one, not an open-ended one. It connotes liability by someone and also to someone. The ... principle making immunity follow liability obviously means that if A has a liability to B he also has an immunity as to B, not that if A has a liability as to X (but not as to B) he has an immunity as to B. (Footnote omitted.)
Larson, Workman's Compensation Law, Vol. 2 A, § 72.33 (1981).
In 1974, the Florida legislature amended section 440.10, obviously eliminating the "horizontal" liability by adding the following language:

*275 A subcontractor is not liable for the payment of compensation to the employees of another subcontractor on such contract work and is not protected by the exclusiveness of liability provisions of § 440.11 from action at law or in admiralty on account of injury of such employee of another subcontractor.
1974 Fla.Laws 74-197, Vol. 1, 546. This permits tort actions between employees of subcontractors and effectively overrules the decision in Miami Roofing. The supreme court recognized this in Motchkavitz v. L.C. Boggs Industries, Inc., 407 So.2d 910 (Fla. 1981). However, though the petitioner there encouraged the court to recede from Younger on the basis of the amendment to section 440.10, the majority declined to do so, holding:
This amendment to section 440.10 disclaimed the intent to make subcontractors liable for securing coverage for each others' employees, and correspondingly abrogated their immunity from suit by each others' employees. Thus the amendment did not explicitly (sic) deal with the situation presented in Younger and in the present case, although it seems to have overruled Miami Roofing. Whatever effect the amendment may have had on the Younger doctrine, however, it does not apply to this case, since all of the operative facts transpired before the enactment of chapter 74-197.
407 So.2d at 914. Then Chief Justice Sundberg, joined by Justice Adkins, dissented, saying:
Since the result reached by the majority, in my mind, is neither compelled by sections 440.10-.11, Florida Statutes (1971), nor supported in logic under the circumstances of a case such as this, I would recede from Younger v. Giller Contracting Co., 143 Fla. 335, 196 So. 690 (1940), and Miami Roofing & Sheet Metal Co. v. Kindt, 48 So.2d 840 (Fla. 1950). Professor Larson, the preeminent authority on the law of Workmen's Compensation, has been particularly critical of Florida's "common-employment" metaphor as being out of the mainstream of the law on this subject.
407 So.2d at 914.
As stated by the majority there, the accident in Motchkavitz occurred prior to the enactment of chapter 74-197 and the court, therefore, did not reach the question of its applicability to that case. The accident here occurred in 1980. The legislature clearly intended to overrule Miami Roofing and, therefore, to permit tort actions by one subcontractor's employee against another subcontractor. The rationale of the amendment obviously was that there should be no immunity from suit when there was no corresponding liability to furnish security for payment of compensation. It is equally clear that in doing so, the legislature adopted the rationale of Jones and eliminated the common employment doctrine by specifically providing that among employees of subcontractors, immunity follows liability to secure compensation. If "immunity", thus, truly follows "liability", then the Younger rationale is no longer logical nor viable. Just as there is no "lateral" liability to secure compensation for employees of other subcontractors, a subcontractor has no "liability" to secure compensation for employees of the general contractor. Here, Abernathy worked for Deltona and if Deltona was, in fact, the general contractor, then Deltona, and not the subcontractors, was liable for securing compensation benefits. The subcontractors, not being liable for securing compensation benefits under the statute, should likewise not be immune from suit.
Recently, in Theisen v. Simmons, 419 So.2d 662 (Fla. 5th DCA 1982), the fifth district held that a sub-subcontractor was immune from suit by the personal representative of the employee of a subcontractor who had contracted with the sub-subcontractor. The court reasoned that this relationship between the subcontractor and the sub-subcontractor was similar to that which exists between a general contractor and its subcontractors, and that the sub-subcontractor, thus, becomes the statutory common employer of the subcontractor's *276 employees and as such is immune from suit. We reject the result reached in Theisen because it perpetuates the inequitable common employment doctrine and is at variance with what we perceive to be the intent of the legislature, and with the logical rationale expressed in Jones v. Florida Power Corp. that immunity follows liability to secure compensation.
We recognize that Theisen is in conformity with the holding in Younger by which we too would be bound if Younger had not been abrogated by chapter 74-197, Laws of Florida. However, we do so construe that amendment to nullify Younger. While, as previously observed, the amendment speaks only to subcontractors, it is illogical to limit the rationale of immunity following liability to secure compensation to just subcontractors. While not controlling, the choice of wording in the title of chapter 74-197 is persuasive to our holding. In explaining the amendment, the title informs that the amendment to section 440.10 is to provide "that the liability provisions of § 440.11, Florida Statutes, do not protect a subcontractor other than the employer of an injured employee." (Emphasis added.) In construing the amended section 440.10 to nullify Younger, we again observe that the majority in Motchkavitz, limited by the time frame of that case, declined to address the effect of the amendment on Younger.
Accordingly, we reverse the summary judgment. We do so because in the first instance the determination of whether Deltona was a "statutory" general contractor was improperly reached on summary judgment. However, we also reverse because we conclude that chapter 74-197 abrogates the statutory immunity in suits by a subcontractor's employee against another subcontractor and in suits by employees of general contractors against subcontractors of the general contractor. Because we are in conflict with Theisen, because we have construed chapter 74-197 as nullifying Younger, and because we believe the issue is one of great public importance, we certify the following question:
CAN THE EMPLOYEE OF A "CONTRACTOR", HAVING RECEIVED WORKMAN'S COMPENSATION BENEFITS FROM HIS EMPLOYER, SUE HIS EMPLOYER'S SUBCONTRACTOR FOR DAMAGES ARISING OUT OF THE NEGLIGENCE OF THE LATTER'S EMPLOYEE?
OTT, C.J., and HOBSON, J., concur.
NOTES
[1] 440.10 Liability for compensation. 

(1) Every employer coming within the provisions of this chapter, including any brought within the chapter by waiver of exclusion or of exemption, shall be liable for and shall secure the payment to his employees of the compensation payable under §§ 440.13, 440.15 and 440.16. In case a contractor sublets any part or parts of his contract work to a subcontractor or subcontractors, all of the employees of such contractor and subcontractor or subcontractors engaged on such contract work shall be deemed to be employed in one and the same business or establishment, and the contractor shall be liable for and shall secure the payment of compensation to all such employees, except to employees of a subcontractor who has secured such payment.
[2] 440.11 Exclusiveness of liability. 

(1) The liability of an employer prescribed in § 440.10 shall be exclusive and in place of all other liability of such employer to any third party tortfeasor and to the employee, his dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death, except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee or his legal representative, in case death results from the injury, may elect to claim compensation under this chapter or to maintain an action at law or in admiralty for damages on account of such injury or death. In such action the defendant may not plead as a defense that the injury was caused by negligence of a fellow servant, that the employee assumed the risk of his employment, or that the injury was due to the contributory negligence of the employee.
[3] Section 10(a) of the Workman's Compensation Act, as amended by chapter 18413, Acts of 1937. This statute, first enacted in 1935, is now section 440.10.