556 So.2d 467 (1990)
Doretha DAVIS, and the State of Florida Department of Health and Rehabilitative Services, Appellants,
v.
Mary SWATTS, Appellee.
No. 89-586.
District Court of Appeal of Florida, First District.
January 31, 1990.
Joseph R. Boyd and William H. Branch of Boyd & Branch, P.A., Chriss Walker, Dept. of HRS, Tallahassee, for appellants.
J. Riley Davis of Taylor, Brion, Buker & Greene, Tallahassee, for appellee.
MINER, Judge.
At issue in this appeal is whether the trial court erred in denying a petition for support brought by HRS pursuant to Chapter 409, Florida Statutes for reimbursement of AFDC benefits.[1] For the reasons appearing hereafter, we reverse and remand with directions.
On October 14, 1988, appellants filed a petition for support against appellee, Mary Swatts. The petition alleged that appellee *468 owed a legal duty to support her four-year old daughter, Tashundra Brown. Appellants further alleged that although appellee had the ability to provide support for her daughter, the child was living with her grandmother, Doretha Davis, and was receiving AFDC benefits. The petition asked for reimbursement of HRS' past support contributions as well as an order requiring appellee to make future support payments in an amount deemed reasonable by the court.
On December 27, 1988, appellee responded by filing a letter. She stated that she was a single parent with four children and that Tashundra lived with her mother, Doretha Davis, because Ms. Davis had health problems and had been living alone. Since Ms. Davis lived down the street from appellee in the same residence complex, appellee was always available for Tashundra. Appellee stated further that she had not neglected Tashundra and had provided monetary support. She also asserted that Tashundra's father paid the state $82 per month as child support and that she was not aware that she was responsible for any specific amount of child support. With her letter, she submitted a financial affidavit reflecting a net monthly income of $666.84, which total did not include receipt of $67.90 per month for child support. Her monthly expenses totaled just over $600.
A hearing was held on January 25, 1989. According to the statement of facts filed in the circuit court, it was established that Mary Swatts was the biological mother of Tashundra Brown and that Tashundra was residing with her maternal grandmother, Ms. Davis, who received monthly AFDC benefits for the child's support. The appellee argued that Tashundra lived with Ms. Davis due to Ms. Davis' poor health. HRS responded that appellee had a duty to support her child, that she had the ability to do so, and that the mere fact that the child might assist Ms. Davis did not relieve appellee from her duty to provide support. In denying the petition, the trial court reasoned that the arrangement should continue so that the state would not be required to pay for Ms. Davis' nursing care. From the trial court's denial of the petition this appeal then ensued.
Citing to the public policy of the state as enunciated in section 409.2551, Florida Statutes (1987), that "children shall be maintained from the resources of their parents", HRS argues that AFDC benefits paid to help support appellee's minor child imposes on appellee an obligation to reimburse the state for benefits paid. Since there is no prior support order establishing appellee's obligation, the appellant argues that section 409.2561(1), Florida Statutes (Supp. 1988) requires the court to determine the extent of appellee's support responsibility. HRS concludes that the court's refusal to order reimbursement of amounts previously paid in AFDC benefits and its denial of the petition to establish appellee's ongoing support obligation is speculative, without statutory basis, and stems from the court's understandable albeit irrelevant concern about allocation of state resources; i.e., whether to support Ms. Davis through AFDC payments to her live-in granddaughter or by paying for her nursing care.
Appellee maintains that applicable provisions of Chapter 409 are intended to assist in those situations where a parent under a support obligation fails to carry out the obligation. She argues that the statutes do not require reimbursement from a parent who has no court-ordered support obligation, and only allow HRS to seek reimbursement from an "obligor". § 409.2561(1), Fla. Stat. (Supp. 1988). The statute defines "obligor" as "a person who is responsible for making support payments pursuant to an alimony or child support order." § 409.2554(6), Fla. Stat. (Supp. 1988). Clearly, she says, an obligor is a noncustodial parent responsible for support payments. Since she is not within this definition, she argues that the trial court was correct in refusing to order reimbursement. Lastly, she argues that the record is devoid of evidence demonstrating her ability to pay either reimbursement or ongoing support.
The question in this case as we see it is whether a parent can be held liable for reimbursement when that parent is not under *469 a support obligation. Receipt of AFDC benefits constitutes an assignment to HRS of any right to support the recipient may be owed "from any other person." § 409.2561(2)(a)(1), Fla. Stat. (Supp. 1988). Moreover, HRS is subrogated to the right of the dependent child or custodian of the child to maintain a support action and to obtain reimbursement of public assistance paid, being paid, or to be paid. § 409.2561(3), Fla. Stat. (Supp. 1988). Section 409.2561(1), Florida Statutes (Supp. 1988), provides in pertinent part:
Any payment of public assistance money made to, or for the benefit of, any dependent child creates an obligation in an amount equal to the amount of public assistance paid... . The obligor shall discharge the reimbursement obligation... . If there is no prior court order establishing an obligation of support, the court shall establish the liability of the obligor, if any, for reimbursement of public assistance monies paid.
(Emphasis added.)
The use of the term "obligor" is troublesome in light of the fact that this term is defined as "a person who is responsible for making support payments pursuant to an alimony or child support order."[2] § 409.2554(6), Fla. Stat. (Supp. 1988). This allows appellee to argue that she cannot be held liable for reimbursement because she is not an "obligor" who was liable for support payments pursuant to an order. Support for such a position can be found in Sapp v. Daniels, 520 So.2d 641 (Fla. 1st DCA 1988). In Sapp, a mother received AFDC benefits for her child. When HRS brought a paternity action and the father admitted paternity, HRS sought reimbursement of the AFDC benefits from the father. The trial court entered an order which split the responsibility for reimbursement between the father and the mother. On appeal, this court reversed, stating:
It is clear from the plain meaning of [section 409.2561(1)] that the legislature intended for only the obligor, e.g., the noncustodial parent responsible for support payments, to reimburse the state for public assistance monies provided to the child.
Id. at 642 (emphasis in original.) The court found that the mother, a custodial parent, could not be considered an "obligor" and thus, could not be held liable for reimbursement. See also Jones v. Ross, 529 So.2d 1159 (Fla. 1st DCA 1988).
In HRS v. D'Andrea, 542 So.2d 1369 (Fla. 2d DCA 1989), the Second District faced a similar situation. In D'Andrea, the wife was awarded custody of the child, but the husband was not ordered to pay child support. When the wife received AFDC benefits, HRS brought a reimbursement action against the husband. The trial court entered an order finding the husband and wife each liable for one-half of the public assistance debt. In reversing the assessment against the wife, the Second District stated:
Section 409.2561(4), Florida Statutes (1988 Supp.), expressly excludes the custodial parent from liability for reimbursement, and the wife thus cannot be required to reimburse HRS for the monies she received in this case. Sapp v. Daniels, 520 So.2d 641 (Fla. 1st DCA 1988).
Id. at 1370. Although there is a citation to Sapp, it is clear that Sapp did not rely upon section 409.2561(4), Florida Statutes (Supp. 1988), which states: "No obligation of support under this section shall be incurred by any person who is the recipient of public assistance moneys for the benefit of a dependent child." D'Andrea demonstrates what seems to have not been considered in Sapp; the custodial parent's immunity from reimbursement actions is not due to his or her status as a custodial parent, nor is it due to the fact that the custodial parent is not an "obligor". Rather, the custodial parents in Sapp and D'Andrea were both the recipients of the AFDC benefits and, thus, would not be required to return benefits which they had received and were entitled to receive.
*470 Although the result in Sapp was correct, the reasoning employed in that case would yield an inappropriate result if applied to the instant case. Appellee should not be able to skirt her support obligations simply because, as a custodial parent, she is not under a support order, and is thus not an "obligor" within the meaning of the statute. Such a result would be at odds with the express purpose of the act that "children shall be maintained from the resources of their parents, thereby relieving, at least in part, the burden presently borne by the general citizenry through public assistance programs." § 409.2551, Fla. Stat. (Supp. 1988). Moreover, this position is based upon an overly restrictive reading of the statutes. If liability for reimbursement were limited to only those parents already under a support order, then the statute would be nothing more than a means of enforcing existing support obligations; the plain language of the statute demonstrates that it is more than this. Section 409.2561(1), Florida Statutes (Supp. 1988), provides in pertinent part:
If there is no prior court order establishing an obligation of support, the court shall establish the liability of the obligor, if any, for reimbursement of public assistance moneys paid.
This language demonstrates that reimbursement can be obtained from one who is not yet subject to a support order. The confusing use of the term "obligor" may be explained by the fact that once the court establishes liability, the person liable for reimbursement becomes the "obligor". HRS's authority to bring paternity suits is further proof that the statute is not merely a means of enforcing existing support obligations. Certainly, there is no existing support order against a person whose identity was not known prior to the paternity suit.
We believe that a proper application of the statute is found in HRS v. Thomas, 477 So.2d 1053 (Fla. 5th DCA 1985), rev. denied, 488 So.2d 829 (Fla. 1986). In Thomas, the husband had legal custody of the child, but sent the child to live with his remarried wife. Although adoption by the wife's new husband was contemplated, it never took place. Eventually, the child came to live with wife's mother, who was forced to obtain AFDC benefits to support the child. When HRS sought reimbursement from the father, the trial court denied HRS's petition finding the claim barred by laches. The court found that the husband would have brought the child back to live with him had he known that the child was sent to live with its maternal grandmother and was in need of support. On appeal, the Fifth District affirmed the finding of laches, but found the husband liable for reimbursement of those AFDC benefits which were received by the grandmother after the husband became aware of the child's living situation. The court found that the father had an obligation to support his child regardless of the fact that a non-parent had assumed custody; this obligation existed despite the fact that there was no court order requiring him to make support payments. The grandmother had a right to child support payments from the father, which right HRS became subrogated to by virtue of the grandmother's acceptance of AFDC benefits. Id. at 1055.
Although Thomas was decided prior to the 1986 amendments which introduced the term "obligor" into the statute, the introduction of that term should not be interpreted as further restricting the class of persons who could be proceeded against in an action for reimbursement. Prior to 1986, the term "responsible parent" was used in place of the present "obligor". "Responsible parent" was defined as follows:
"Responsible parent" means the natural or adoptive parent of a dependent child, which parent owes a duty of support or against whom a proceeding for the establishment of a duty of support, the enforcement of a duty of support, or the registration of a support order has been commenced.

§ 409.2554(5), Fla. Stat. (1985) (emphasis added.) The emphasized language made it clear that a parent could be liable for reimbursement even though the parent was not yet subject to a support order. When "obligor" came to replace "responsible parent", *471 the emphasized language was left out of the definition and the result was the confusion referred to above. The omission should not be construed as evidence of an intent to restrict the parties who are subject to an action for reimbursement. The phrase in section 409.2561(1), Florida Statutes (Supp. 1988), which allows for reimbursement where "there is no prior court order establishing an obligation", demonstrates that reimbursement actions are not restricted to those who are under a support order prior to commencement of HRS action. Such an interpretation of the definition of "obligor" would be counter to the rule of statutory construction that a definition in a statute must not be repugnant with other parts of the act; thus, definitions may be restricted or expanded by the subject matter of the statute. See 2A Sutherland Statutory Construction § 47.07 (4th ed.) In Vocelle v. Knight Brothers Paper Company, 118 So.2d 664, 667 (Fla. 1st DCA 1960), this court stated:
When a statute contains a definition of a word or phrase that meaning must be ascribed to the word or phrase whenever repeated in the same statute unless a contrary intent clearly appears.
(Emphasis in original.)
In the instant case it is clear from the substantive portions of the statute that the definition of "obligor" does not immunize from reimbursement liability those who are not under a preexisting support order. Thus, the result in Thomas, supra, is not altered by the change in definitions.
In sum, we find that the trial court erred in refusing to order reimbursement and that it should not have considered the possibility that a reimbursement order would result in the grandmother needing nursing care. We find that the appellee was not immune from liability for reimbursement simply because she was a custodial parent who was not under a support order. On remand, the trial court must determine the amount of reimbursement and establish a continuing support obligation taking into consideration, among other things, appellee's financial ability to respond to such an order. Since the record is unclear concerning the amount of benefits received, the amount of funds, if any, that were contributed by appellee, and whether Tashundra's father was making support payments as suggested by appellee in her response to HRS's petition for reimbursement, the trial court may wish to conduct further proceedings in the premises.
Reversed and remanded.
SMITH and THOMPSON, JJ., concur.
NOTES
[1] The record does not include a transcript of the hearing that was held on appellant's petition for support. The facts, arguments and reasoning supporting the trial court's decision are contained in a statement of facts which appellants filed in the circuit court immediately prior to submitting their initial brief in the instant appeal. The statement of facts was apparently filed pursuant to Rule 9.200(b)(4), Fla.R.App.P. and was accepted by the trial court as the record of what transpired at the January 25, 1989 hearing.
[2] One can only speculate how an "obligor's" liability could be established in those situations where there is no prior support order, when an obligor is, by definition, one who is responsible for support payments pursuant to a support order.